IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM BOWSER, CHRISTOPHER ASHBY, SCOTT BEYNON, JORDAN NELSON, SCOTT RUTHERFORD, JOHN HAMRICK, and EDMOND & WHEELER, INC.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SEVER<br><br><br>Case No. 2:23-cr-00281-JNP<br><br>District Judge Jill N. Parrish |

The government obtained an indictment against six individuals and one business entity for conspiracy to commit wire fraud and 17 counts of wire fraud. Before the court is defendant William Bowser's motion to sever his trial from that of the other defendants. ECF No. 101. The motion is DENIED.

## BACKGROUND

The government makes the following allegations in the indictment.

Bowser is the founder and former president of Noah Corporation, which developed and operated commercial event centers across the United States. Noah opened its first event center in 2007. By 2019, it operated 42 event centers nationwide. Around 2013, Noah sold its existing event centers to third parties and began paying rent to the new owners. This maneuver provided an influx of cash but increased Noah's fixed expenses.

Christopher Ashby, Scott Beynon, Jordan Nelson, and Scott Rutherford (collectively, the Rockwell defendants) are founders and owners of Rockwell Debt Free Properties. Rockwell was

formed to purchase commercial properties and resell fractional, tenant-in-common ownership interests in these properties to investors. In 2013, Rockwell began to solicit investors to purchase fractional interests in event center properties that Noah leased. Around 2015, the Rockwell defendants and Bowser agreed to develop additional event center properties together. Under this agreement, Bowser would locate suitable parcels of land and oversee construction of the event centers. Rockwell would supply the funds to purchase the land and build the event centers. Rockwell, as the owner of each new event center, would then negotiate a lease agreement with Noah as the tenant.

Rockwell sold fractional, tenant-in-common interests in each planned event center property to investors, who were then entitled to a proportionate share of the lease payments made by Noah. These investors were referred to Rockwell in exchange for a fee by a network of financial planners, 1031 exchange specialists, real estate brokers, attorneys, and other salespeople who had an ongoing relationship with Rockwell. By 2019, Rockwell had marketed 42 event center properties to investors.

By at least 2014, Noah was operating at a substantial net loss. The government asserts that Bowser used new investor funds supplied by the Rockwell defendants to sustain the operation of Noah's existing event centers, including by paying rent owed to prior investors, instead of using the funds to develop new properties as promised. Specifically, the government contends that between 2017 and early 2019, individuals invested approximately $30 million to fund the development of five new event centers. But no buildings were ever constructed. Instead, the money allegedly went to payments towards (1) commissions, (2) Noah's business operations, (3) prior investors, (4) construction costs for other event centers, and (5) rent toward previously built event centers.

The government charged Bowser and the Rockwell defendants with conspiracy to commit wire fraud by forming an agreement to "defraud individuals by inducing them to invest in Noah's event centers through false statements, misrepresentations, deception, fraudulent conduct, and omissions of material facts." It also charged these defendants with 17 counts of wire fraud for transfers of money from investors for fractional ownership interests in event center properties to be developed with the funds. The government contends that each defendant devised a scheme or artifice to defraud and/or made false promises and representations to induce the investors to part with their money.

Now before the court is Bowser's motion to sever his trial from that of the other defendants. He argues that there is a serious risk that a joint trial would unduly hamper his ability to defend himself at trial and compromise his right not to testify. The Rockwell defendants each filed a brief in support of Bowser's motion for a separate trial.

## ANALYSIS

Rule 8(a) of the Federal Rules of Civil Procedure permits the government to join two or more defendants in the same criminal proceeding "if they are alleged to have participated in the same act or transaction . . . constituting an offense or offenses." "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Additionally, there is "a presumption that co-conspirators in a conspiracy trial should be tried together." *United States v. Clark*, 717 F.3d 790, 817 (10th Cir. 2013). "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Garcia*, 74 F.4th 1073, 1110 (10th Cir. 2023) (citation omitted).

Nonetheless, Rule 14(a) permits a court to sever properly joined defendants if joinder for trial "appears to prejudice a defendant." "Severance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case." *United States v. Rogers*, 925 F.2d 1285, 1287 (10th Cir. 1991) (citation omitted). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Examples of prejudice that may justify severance include situations where evidence is admissible against one defendant but not another, where exculpatory evidence is unavailable in a joint trial, or where the defendants intend to proffer mutually exclusive defenses. *Id.* at 538–40; *United States v. Armenta*, No. 23-7035, 2024 WL 4784958, at *4 (10th Cir. Nov. 14, 2024).

Bowser argues that the court should sever his trial from that of his codefendants for two reasons. First, he contends that the Rockwell defendants will offer a defense that contradicts his defense at trial. Second, Bowser asserts that a joint trial would be unduly prejudicial because the jury would hear the incriminating prior statements of the Rockwell defendants that otherwise would not be admissible against him.

I.     **CONFLICTING DEFENSES**

Courts apply a three-step framework when deciding whether to sever a defendant for trial based on mutually antagonistic defenses. *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007). First, a court "must determine whether the defenses presented are 'so antagonistic that they are mutually exclusive.'" *Id.* (citation omitted). "Second, because 'mutually antagonistic defenses are not prejudicial per se,' a defendant must further show 'a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt

4

or innocence.'" *Id*. (cleaned up) (citation omitted). "Third, if the first two factors are met, the trial court exercises its discretion and 'weighs the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration.'" *Id*. (cleaned up) (citation omitted).[1]

Under the first step, the proposed defenses of joined defendants are mutually exclusive if the "essence or core of the defenses [are] in conflict such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Armenta*, No. 23-7035, 2024 WL 4784958, at *4 (10th Cir. Nov. 14, 2024) (citation omitted). Bowser has met this standard. He asserts that one of his defenses to the government's charges against him will be that he did not misrepresent the financial condition of Noah to the Rockwell defendants and that he did not divert funds without the Rockwell defendants' knowledge. The Rockwell defendants, on the other hand, intend to argue that Bowser misrepresented the financial health of Noah and that he did not disclose that he was diverting funds invested for the development of new properties toward other business expenses. The jury could not believe the core of Bowser's defense—that he disclosed the finances of Noah and the diversion of funds to the Rockwell defendants—without rejecting the core of the Rockwell defendants' defense—that Bowser had not disclosed this information.

---

[1] Bowser relies heavily on two out-of-circuit opinions to support his argument that the court should sever his case for trial due to conflicting defenses: *United States v. Romanello*, 726 F.2d 173 (5th Cir. 1984) and *United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991). But both of these opinions predate the seminal Supreme Court case addressing this issue: *Zafiro v. United States*, 506 U.S. 534 (1993). Moreover, there is no dearth of Tenth Circuit caselaw interpreting and applying the severance standard established by *Zafiro*. Accordingly, the court does not find *Romanello* or *Tootick* to be persuasive authorities.

Under the second step, Bowser must show that a joint trial would result in "actual prejudice." *See United States v. Clark*, 717 F.3d 790, 818 (10th Cir. 2013) (citation omitted). "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). Nor can actual prejudice be shown "merely because [codefendants] may have a *better chance* of acquittal in separate trials." *Pursley*, 474 F.3d at 766 (quoting *Zafiro*, 506 U.S. at 539). To prove actual prejudice, the moving defendant must show that the contradictory defense would lead to "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 765 (alteration in original) (quoting *Zafiro*, 506 U.S. at 539).

Bowser argues that a failure to sever his case for trial would compromise a specific trial right: his Fifth Amendment right not to testify. He asserts that if the Rockwell defendants pursue their proposed defense in a joint trial, he will be forced to waive his right not to incriminate himself and take the stand to counter their allegations. Although Bowser clothes his argument in the terms of prejudice to a constitutional right, his assertion that he will testify is merely a proxy for his contention that his defense will be prejudiced by his codefendants' defenses in a joint trial. In other words, Bowser argues that the prejudice caused by the Rockwell defendants' contradictory defense would be so acute that he would waive a Fifth Amendment trial right that he would otherwise exercise in a sperate trial. Because the core of his argument rests on the severity of the disadvantage to his defense at trial, the court looks to caselaw examining this type of prejudice.[2]

---

[2] Bowser does not cite any authority suggesting that a defendant's assertion that he or she would waive the Fifth Amendment right not to testify requires severance. The court concludes that a voluntary abdication of this right as a matter of trial strategy does not serve as a trump card mandating a separate trial.

The Supreme Court's opinion in *Zafiro* belies Bowser's assertion of actual prejudice. In that case, police officers seized large quantities of illegal drugs and cash found in an apartment, in a box being carried into the apartment, and in a car parked in the apartment's garage. 506 U.S. at 536. Four individuals found in the apartment were charged with drug distribution crimes and tried jointly. *Id*. Each defendant presented essentially the same defense: he or she was unaware of the drugs and had nothing to do with a conspiracy to distribute the illegal substances seized. *Id.* Two of the defendants chose to testify at trial, while the other two defendants chose not to testify. *Id.* The jury found each of the four defendants to be guilty of conspiracy to distribute illegal drugs. On appeal, the defendants argued that the trial court abused its discretion by denying their motions for separate trials. *Id.* at 536–37. The Supreme Court noted that the defendants did "not articulate any specific instances of prejudice. Instead they contend[ed] that the very nature of their defenses, without more, prejudiced them." *Id.* at 539–40. The Court rejected the defendants' generic conflicting defenses argument, reasoning that they were "not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id*. at 540. Accordingly, the Court concluded that the defendants' joint trial had not "subjected them to any legally cognizable prejudice." *Id.* at 541.

In addition to Bowser's assertion that the Rockwell defendants' prior statements would prejudice him, which the court rejects in Part II of this order, Bowser likewise argues that the nature of the defendants' conflicting defenses is sufficient to support a finding of actual prejudice. But the potential for conflicting defenses at trial does not require severance.[3] *Id*. at 539–41. Indeed,

---

[3] Notably, none of the Rockwell defendants represented that they would testify in a joint trial in order to accuse Bowser of misleading them. Even if they had done so, *Zafiro* reasoned that testimony proffered by a codefendant in a joint trial does not create legally cognizable prejudice.

Bowser's case for severance is much weaker than the arguments presented by the defendants in *Zafiro*. In that case, the defendants presented complete defenses to the charges against them, each arguing that they had no knowledge of the seized drugs and that they did not participate in a conspiracy to distribute the substances. Here, Bowser proposes to argue that he told the Rockwell defendants about both Noah's financial struggles and his diversion of funds from construction projects to keep the business afloat. But this argument is not a complete defense to the charges against him. He could have been completely forthright and honest with the Rockwell defendants and still be guilty of conspiring to commit wire fraud and of devising a scheme or artifice to defraud for the individual counts of wire fraud. Thus, the Rockwell defendants' conflicting defense would not be so prejudicial as to "prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 534. Accordingly, the defendants' proposed antagonistic defenses do not rise to the level of actual prejudice under the relevant Supreme Court and Tenth Circuit authorities.

Moreover, even if Bowser could show actual prejudice, the court would decline to sever his case for trial under the third step of the *Pursley* test. "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39. "A district court must 'weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Herrera*, 51 F.4th 1226, 1272 (10th Cir. 2022) (citation omitted). "When the risk of prejudice is high, a district court is more

---

506 U.S. at 540 ("[A] fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.").

likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

The costs of conducting separate trials in this case would be high. *See United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995) ("In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." (citation omitted)). The parties have represented to the court that a joint trial in this case would require four weeks of trial time. Because the government would have to present the same evidence twice regarding the alleged conspiracy and the relationship between Noah and Rockwell in separate trials, severance would undoubtedly expand the already substantial trial time dedicated to this case. Thus, separate trials would significantly increase the already extensive court resources allocated to this case. Moreover, the court would be required to call two jury panels, doubling the number of citizens that would have to take time out of their lives to comply with their civic jury duties. Weighing the significant costs associated with separate trials against the spillover prejudice to Bowser caused by the Rockwell defendants' conflicting arguments in a joint trial, the court determines that severance is not warranted.

In short, Bowser's motion to sever his case for trial fails under both steps two and three of the test outlined in *Pursley*. Accordingly, the court rejects his contention that conflicting defenses merit a separate trial.

## II.     PRIOR STATEMENTS OF THE ROCKWELL DEFENDANTS

Bowser also asserts that the court should sever his trial because in a joint trial, the government would proffer damaging evidence admissible against the Rockwell defendants but not against him. Each of the Rockwell defendants has given sworn testimony regarding events relevant

9

to this criminal prosecution during depositions for civil litigation, bankruptcy proceedings, or a Securities and Exchange Commission investigation. These prior statements could be offered by the government as evidence against each Rockwell defendant making the statement, but they would not be admissible against the other defendants, including against Bowser. *See* FED. R. EVID. 801(d)(2)(A) (exempting statements made by an opposing party from the hearsay rule). In support of his motion to sever, Bowser quotes portions of the Rockwell defendants' sworn statements in which they represent that Bowser did not disclose Noah's financial troubles or his diversion of funds intended for the construction of new event centers. Bowser argues that the potential for the government to offer these statements[4] in a joint trial justifies severance because they would be unduly prejudicial and any instruction to the jury to consider such statements only in relation to the criminal case against the speaker and not against himself would be ineffective.[5]

The court rejects Bowser's request for severance because none of the statements he references would be admissible in a joint trial. In *Bruton v. United States*, 391 U.S. 123, 126 (1968), the Supreme Court held the Confrontation Clause of the Sixth Amendment precludes the admission of a nontestifying defendant's confession in a joint trial with a codefendant if the confession directly incriminates the codefendant. The confession may be admitted, however, if "(1) the confession has been modified to avoid directly identifying the nonconfessing codefendant and (2)

---

[4] Of course, the Rockwell defendants would not be able to enter the statements into evidence as part of their defense because they would not be offered against an opposing party who made the statement. *See* FED. R. EVID. 801(d)(2)(A).

[5] Because this argument is not based on conflicting defenses, the court does not employ the three-step *Pursley* framework. Step one of this test, which requires an analysis of whether the proposed defenses are incompatible, simply does not apply. As discussed below, the court denies the motion to sever because Bowser has failed to show that that he would be prejudiced by any of the quoted statements.

the court offers a limiting instruction that jurors may consider the confession only with respect to the confessing codefendant." *Samia v. United States*, 599 U.S. 635, 640 (2023). But redactions to a confession are not always sufficient to render it admissible. If the modifications or deletions are performed in a way such that it would be immediately obvious to the jury that the confession also points an accusatory finger at the nonconfessing defendant, the redacted confession would be "directly accusatory" and inadmissible under *Bruton*. *Gray v. Maryland*, 523 U.S. 185, 194–95 (1998).

The portions of the Rockford defendants' testimony referenced in Bowser's motion to sever cannot be modified in a manner that would make them admissible. Indeed, the quoted statements are not confessions because the Rockford defendants do not admit to any self-incriminating facts. Instead, the testimony consists entirely of statements accusing Bowser of failing to disclose the financial health of Noah or the diversion of funds. Because these statements are wholly comprised of accusations leveled against Bowser, they are not susceptible to redaction to erase any obvious reference to Bowser without rendering them completely meaningless. Since the quoted statements would be inadmissible in a joint trial, they would not prejudice Bowser.

Of course, if the government chooses to proffer other statements made by the Rockford defendants on the theory that they tend to incriminate the speaker, the court is bound by *Bruton* and its progeny to ensure that any incriminating references to Bowser in those statements are properly redacted to exclude any obvious allusions to accusations made against him. Even if the redacted confession could indirectly incriminate Bowser, severance would not be required. In *Samia*, the nonconfessing defendant argued that the introduction of a redacted confession of a codefendant at a joint trial infringed his Confrontation Clause rights because the jury could infer from other evidence that the "other person" described in the confession was himself. 599 U.S. at

642–43. The Supreme Court rejected this argument and held that a confession that indirectly incriminates a codefendant when linked with other competent evidence is admissible. *Id*. at 652–53. The Court further reasoned that the government's intent to proffer a confession that could indirectly incriminate a codefendant does not require a district court to order separate trials. *Id.* at 654. Given the "vital role" that joint criminal trials play in the criminal justice system, mandating severance "is 'too high' a price to pay." *Id.* (citation omitted). Accordingly, the possibility that the government may proffer some of the Rockwell defendant's prior statements as evidence against them at a joint trial does not justify severance in this case.

## CONCLUSION

For these reasons, the court denies Bowser's motion to sever.

DATED May 5, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge